# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE J. BROWN, III,

     Plaintiff,                    No. CIV S-08-1245 GGH

     vs.

AMERISOURCEBERGEN CORPORATION,

     Defendant.                <u>ORDER</u>

_____/

     Defendant's motion to dismiss was heard on July 24, 2008.[1] Adrianne Samms and Matthew Ruggles appeared for defendant. Etan Rosen appeared for plaintiff. Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that the claims are preempted by the Labor Management Relations Act ("LMRA"), which bars the complaint by virtue of its six month statute of limitations. After reviewing the record, the court determined that defendant's motion should have been brought as a motion under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6), and that further evidence was necessary. As a result, the parties were directed to submit evidence in support of their respective arguments. Having now reviewed that evidence, the court issues the following order.

---

[1] This case is before the undersigned pursuant to the parties' Consents to Proceed Before a United States Magistrate Judge. <u>See</u> 28 U.S.C. § 636(c).

1

BACKGROUND

Plaintiff was formerly employed by defendant pursuant to a collective bargaining agreement ("CBA").  According to the complaint, plaintiff was laid off by defendant around August 11, 2006, after being informed that he could receive a recall notice. (Compl., ¶ 7; Brown Decl. ¶ 2.)  On May 18, 2007, plaintiff was informed of his recall but was given unspecified time by Human Resource Manager Ken Howie to deal with a prior commitment. (Compl., ¶ 9; Brown Decl. ¶ 8.)  According to plaintiff, the parties had an oral agreement on June 1, 2007, to give plaintiff additional time before returning to work. (Compl., ¶ 10; Brown Decl., ¶ 10.)  According to defendant, Howie informed the Union Business Agent on June 13, 2007, that he could not hold the position open for plaintiff. (Howie Decl., ¶ 5.)  Plaintiff made arrangements for a required drug screen which occurred on June 14, 2007. (Compl., ¶¶ 13, 14; Brown Decl., ¶ 15.)  On August 3, 2007, plaintiff sent an email to Howie to confirm he would be returning to work on August 6, 2007.  Howie responded that the company could not hold open a position for plaintiff for three months (from the date plaintiff was informed of the recall), and that plaintiff would not be rehired. (Compl., ¶ 15; Brown Decl., ¶¶ 16, 17.)  Plaintiff alleges that this response breached the oral agreement.

Plaintiff brought suit in state court on May 6, 2008, for claims of breach of express contract, breach of oral contract, breach of implied covenant of good faith and fair dealing, and false promise.  Defendant removed the action to this court on June 4, 2008, based on complete preemption of all claims by the Labor-Managment Relations Act ("LMRA"), 28 U.S.C. § 185.  Defendant now moves to dismiss all four claims as barred by the LMRA's six month statute of limitations.  However, the issue of application of the LMRA statute of limitations is intertwined with the subject matter jurisdiction in that the prerequisite for application of the LMRA statute of limitations is jurisdiction under that statute.  If jurisdiction exists, the expiration of the statute prior to filing of the federal action is a foregone conclusion.

\\\\\

LEGAL STANDARD FOR MOTION TO DISMISS

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of proof that jurisdiction exists. See, e.g., Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir.1979). Different standards apply to a 12(b)(1) motion, depending on the manner in which it is made. See, e.g., Crisp v. U.S., 966 F. Supp. 970, 971-72 (E.D. Cal. 1997).

First, if the motion attacks the complaint on its face, often referred to as a "facial attack," the court considers the complaint's allegations to be true, and plaintiff enjoys "safeguards akin to those applied when a Rule 12(b)(6) motion is made." Doe v. Schachter, 804 F. Supp. 53, 56 (N.D.Cal. 1992). Presuming its factual allegations to be true, the complaint must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction. For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendants must be residents of different states. For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute. Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

Second, if the motion makes a "factual attack" on subject matter jurisdiction, often referred to as a "speaking motion," the court does not presume the factual allegations of the complaint to be true. Thornhill, 594 F.2d at 733. In a factual attack, defendant challenges the truth of the jurisdictional facts underlying the complaint. "Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (quotations and citation omitted). The court may hear evidence such as declarations or testimony to resolve factual disputes. Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th

1  Cir. 1988).[2]

2  DISCUSSION

3        A federal court is a court of limited jurisdiction, and may adjudicate only those
4  cases authorized by the Constitution and by Congress.  See Kokkonen v. Guardian Life Ins. Co,
5  511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  U.S. Const. Art. III, § 1 provides that the
6  judicial power of the United States is vested in the Supreme Court, "and in such inferior Courts
7  as the Congress may from time to time ordain and establish."  Congress therefore confers
8  jurisdiction upon federal district courts, as limited by U.S. Const. Art. III, § 2.  See Ankenbrandt
9  v. Richards, 504 U.S. 689, 697-99, 112 S. Ct. 2206, 2212 (1992).  Lack of subject matter
10 jurisdiction may be raised at any time by either party or by the court.  See Attorneys Trust v.
11 Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

12       The basic federal jurisdiction statutes, 28 U.S.C. §§ 1331 & 1332, confer "federal
13 question" and "diversity" jurisdiction, respectively.  Statutes which regulate specific subject
14 matter may also confer federal jurisdiction.  See generally, W.W. Schwarzer, A.W. Tashima & J.
15 Wagstaffe, Federal Civil Procedure Before Trial § 2:5.  Unless a complaint presents a plausible
16 assertion of a substantial federal right, a federal court does not have jurisdiction.  See Bell v.
17 Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1945).  "A party invoking the federal court's
18 jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."
19 Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

20       Removal of a state court action is proper only if it originally could have been filed
21 in federal court.  28 U.S.C. § 1441.  A federal question must be presented on the face of a
22 properly pleaded complaint.  See Gully v. First National Bank, 299 U.S. 109, 112-112, 57 S. Ct.

---

[2] If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v. Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft Indus., 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion determines facts where jurisdictional issue and merits are intertwined).

96, 97-98 (1936). Ordinarily, a federal defense to a complaint containing only state law claims is not justification for removal based on the well-pleaded complaint rule. Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S. Ct. 2425, 2430 (1987). An exception to this rule is the "complete preemption" doctrine which applies in certain extraordinary cases. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. at 393, 2430. The complete preemption doctrine applies to cases raising claims pursuant to section 301 of the LMRA, 29 U.S.C. § 185(a). Id.

Preemption under the LMRA occurs where there is a state law claim that is either "based directly on rights created by a collective bargaining agreement," or "substantially dependent on an interpretation of a collective bargaining agreement." Beals v. Kiewit Pacific Co., Inc., 114 F.3d 892, 894 (9th Cir. 1997), *citing* Caterpillar Inc., 482 U.S. at 394, 107 S. Ct. at 2430-31. See also Hyles v. Mensing, 849 F.2d 1213, 1215-16 (9th Cir. 1988); Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008). If a claim only tangentially involves a provision of the CBA, it is not preempted. Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993). Preemption does not necessarily result where a CBA must be consulted for information, Aguilera v. Pirelli Armstrong Tire Corporation, 223 F.3d 1010, 1014 (9th Cir. 2000), or where the court must merely "look to" the CBA. Romero v. San Pedro Forklift, Inc., 2008 WL 313063 (9th Cir. 2008). "[A] court's perusal of the agreement to determine whether such provisions are contained within it does not constitute 'interpretation of that agreement." Wells v. General Motors Corp., 881 F.2d 166, 174 (5th Cir. 1989).

Defendant argues that although the face of the complaint alleges only state law claims, those claims are inextricably intertwined with the CBA, and therefore the CBA governs. As a result, defendant claims this action is barred because plaintiff did not initiate it until more than eight months after he learned defendant did not have a position for him, and that the LMRA requires that an action be initiated within six months.

Courts look at various factors in determining whether a claim is premised on the CBA. The first question is whether the plaintiff occupied a position covered by the CBA, thereby requiring his contract to be subject to the terms of the labor agreement. Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 998 (9th Cir. 1987); Audette v. ILWU Local 24, 195 F.3d 1007, 1112 (9th Cir. 1999). Second, if an employee does not have access to the grievance procedure, his claim will not fall within the LMRA and he will need to state a breach of contract claim instead. Price v. Georgia-Pacific Corp., 99 F. Supp.2d 1162, 1166-67 (N.D. Cal. 2000).[3]

The complaint alleges that plaintiff was hired "subject to a collective bargaining agreement between Defendant and the Teamsters Local 150 Union." (Compl. ¶ 6.) It also alleges that after plaintiff was recalled and had problems completing his drug test due to laboratory problems, a union representative, Mr. Daurie, called plaintiff with concerns that plaintiff refused to submit to drug testing. (Id. at ¶ 13.) The complaint does not provide any other information regarding plaintiff's union status during the time period at issue or whether the grievance process was available to him during the time of the alleged violations. Therefore, the parties were directed to submit further evidence. Having now reviewed that evidence as well as the exhibits to the complaint, the court will make these determinations.

It is undisputed that plaintiff's position before his lay-off was covered by the CBA. According to plaintiff, he was a union member when he was laid off on August 11, 2006, and continued to personally pay union dues until about February 21, 2007. (Brown Decl., ¶¶ 4, 5.) Around the end of February, 2007, plaintiff states he submitted a withdrawal card to the union which enabled him to retain his interest in his pension, toward which he had earned four out of the five required years to vest, and to retain his retirement status in a possible future

---

[3] The Young court stated in a footnote that discharged employees who do not have access to the grievance procedure under the CBA are unable to state a claim for breach of the CBA, and therefore a federal court lacks jurisdiction. Young, 830 F.2d at 998 n. 2. Young cited Hollins which focused on probationary employee discharge and noted how the CBA at issue precluded probationary employees from using the grievance procedure to resolve termination disputes. Hollins v. Kaiser Foundation Hospitals, 727 F.2d 823, 825 (9th Cir. 1984).

Teamster position with a new employer. He intended at that time to take a job with another union shop. (Id. at ¶ 7.) According to plaintiff, defendant contacted him on May 18, 2007 to offer him his job back. (Id. at ¶ 8.) Plaintiff's declaration states that he was not a union member on August 3, 2007, when defendant allegedly breached the contract, was not paying union dues at this time, and "to [his] knowledge, did not have access to the grievance process." (Id. at ¶ 18.)

AmerisourceBergen states that it was party to a collective bargaining agreement with Teamsters Local 150 and that the job plaintiff applied for was covered by the CBA as were all order filler positions. (Howie Decl., ¶ 2-4.) The declaration specifically states, "Article 13 of the CBA provides for recall and rehiring of laid off employees. George Brown was one of the employees being re-hired as part of the recall in May 2007 pursuant to the terms of the CBA." (Id. at ¶ 3.) Despite plaintiff's claim of an oral agreement on June 1, 2007, whereby Howie agreed to allow plaintiff to return to work at the end of July, Howie states that around June 13, 2007, he received a phone call from the Union's Business Agent, Alan Daurie, who informed him that plaintiff would not be able to report to work until August, 2007, and asked if the employer could hold the position open until that time. (Brown Decl., ¶ 10; Howie Decl., ¶ 5.) Howie explained to him that he could not do so as the CBA required recalled employees to report to work within four days. (Id. at ¶ 5.) An email dated June 13, 2007, indicates that Howie related to Daurie this requirement as well as the requirement that Brown had to comply with the recall provisions of the CBA including a background check and drug test. Daurie's response to this email states in part, "[t]he intent of this settlement was to help my members and not hurt them ...." (Id. at Ex. A.)

The CBA states that it "constitutes the sole and entire existing Agreement between the contracting parties and supersedes all previous agreements or understandings." (Howie Decl., Ex. B, § 4.1.) Therefore, any oral side agreement between plaintiff and Howie would not be legally effective.

\\\\\

The CBA further provides that "[a]ll employees shall apply for membership in the Union on or after the thirty-first (31st) day following the beginning of their employment or the effective date of this Agreement, whichever is later, and as a condition of employment, shall maintain their membership in the Union in good standing." A union "membership in good standing" requires payment of periodic dues. (Compl., Ex. F, § 2.1; Howie Decl., Ex. B.) "An employee who fails to comply with this provision within seven (7) days after receipt of written notice from the Union shall be discharged." (Id.) The parties have submitted no information regarding the significance of plaintiff's having submitted a withdrawal card or having stopped payment of union dues. Nevertheless, defendant states, "[h]ad George Brown been recalled, Mr. Brown would have been required to become a Union member and pay regular union dues and initiation fees. If the company had violated any provision of the recall process, Mr. Brown would have been able to grieve that violation with Teamsters Local 150." (Howie Decl., ¶¶ 9-10.) Howie points out that the Union will periodically notify the Company when an employee does not pay dues and demand that the Company discharge the delinquent employee. (Id. at ¶ 11.)

Plaintiff's exhibits do in part support defendant's position that plaintiff continued to be represented by the union during his layoff period. Attached to the complaint is a letter, dated August 24, 2006, from Ken Howie to plaintiff which states:

> In anticipation of a possible need to replace several employees beginning on Friday, September 1, 2006, we are contacting all currently laid off employees with recall rights to advise you that you may be receiving a recall notice from the Company next week. If necessary, we will be contacting laid off employees in order of seniority in accordance with the Teamsters' contract first by telephone and then in writing. Please make sure your current contact information is correct.

(Compl., Ex. B.) Although this letter is dated soon after plaintiff's layoff and before he submitted his withdrawal card, it evidences that any recall would be subject to the CBA.

\\\\\

\\\\\

Defendant also points to plaintiff's emails during the time period at issue which evidence his union status. On June 6, 2007,[4] plaintiff emailed Howie regarding his request for a copy of the "the agreement reached between Amerisource Bergen and Teamster Local 150, with regards to my recall and conditions to return to work." (Compl., Ex. C at 2.) Howie responded that the only written documentation which named plaintiff specifically was an email Howie had sent to Alan Daurie at Local 150. Howie's email states, "[t]his is to confirm that AmerisourceBergen agreed with Local 150 recall [sic] George Brown with all seniority and the full experienced [rate] of pay, in addition upon returning to work the company would pay a one time bonus of $1600 to George Brown."[5] (Id., Ex. C at 1.) Defendant points to another undated email, sent around August 7, 2007, wherein plaintiff asked union agent Daurie about the terms of his return to work, including date and time. (Id., Ex. E.)

Defendant additionally refers to the CBA which addresses layoff and rehiring as well as breaks in seniority. In regard to layoff and rehire, § 13.1 states that where there is a reduction in forces, the most recent employees hired will be the first employees to be laid off, and the last employees laid off will be the first rehired. (Compl., Ex. F, Art. 13, § 13.1.) Another section deals with breaks in seniority which will be found under various conditions, including twelve consecutive months of unemployment due to layoff, and "failure of a former employee to respond within four (4) working days after receipt of a recall notice by the Company to the employee's last known address, unless acceptable proof of illness or other reasons satisfactory to the Company is given for a delay in reporting." (Id., § 13.3.)

These exhibits provide sufficient evidence that plaintiff's job was covered by the CBA, that he was a union member when he was laid off, that he continued to be represented by

---

[4] It appears that plaintiff re-sent the email on June 8, 2007. (Id., Ex. D.)

[5] The $1600 amount is also referred to in the CBA concerning employees laid off on December 6, 2006 who were later recalled. Although plaintiff was laid off in August, 2006, this dollar amount apparently applied to him also. (Id., Ex. F at 1.)

the union during his layoff, that the union was involved in his recall to work, and that if he returned to work, his position would again be covered by the CBA. Most cases find preemption under these circumstances. See Beals v. Kiewit Pacific Co., Inc., 114 F.3d 892, 894 (9th Cir. 1997) (finding preemption where plaintiff union member and hired to fill position covered by CBA); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 998 (9th Cir. 1987) (finding preemption where job position covered by CBA and plaintiff probationary union employee). "[W]here the position in dispute is 'covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted.'" Audette, 195 F.3d at 1112, *quoting* Beals, 114 F.3d at 894.

This case is also similar to Darden v. United States Steel Corp., 830 F.2d 1116, 1119 (11th Cir. 1987), wherein the court held that "an employee in a layoff status is still an employee for purposes of coverage by a collective bargaining agreement." See also Peerless Pressed Metal Corp. v. International Union, 451 F.2d 19, 21 (1st Cir. 1971) (finding employee in laid off status still an employee although not working because he possesses certain rights accruing to him under the CBA). *Cf.* Anderson v. Ford Motor Co., 803 F.2d 953, 957-58 (8th Cir. 1986) (finding no preemption because alleged promises made before appellants were employees subject to CBA). The fact that the CBA provides guidelines for layoff and rehiring is also indicative of plaintiff's status as union employee. Darden, 830 F.2d at 1119 (finding that where laid off employees retain seniority and rehire rights, they are classified as employees for purposes of coverage under CBA). Here, plaintiff concedes that despite his withdrawal card submission and termination of union dues payments, he retained an interest in his pension and retirement status in a future Teamster position.

Despite this evidence, plaintiff is insistent that the grievance process was not available to him. Plaintiff refers to Price v. Georgia-Pacific Corp., 99 F. Supp.2d 1162, 1167 (N.D. Cal. 2000), wherein the plaintiff occupied a position officially covered by the CBA, but he was a non-union employee and did not pay union dues. The court concluded that because the

plaintiff did not have a relationship with the union at the time of his termination, he could not pursue an LMRA claim, but his only remedy was for breach of contract. 99 F. Supp.2d at 1167. The court also declined to find preemption even where the oral contract incorporated the CBA by reference and required interpretation of the CBA. It returned to its first finding, that because the grievance process was not available to a non-union member, the fact that the oral contract referenced the CBA did not transform the claim into one under the LMRA. Id. at 1168.

The issue here is muddled because of plaintiff's attempt to withdraw from the union at a time when reinstatement seemed improbable – a resignation which for unknown reasons was never acknowledged by the union. Yet, plaintiff acted, at times, as if he were still a member, and the union acted as if he were as well. The court finds that it need not decide when, if ever, the withdrawal became effective because plaintiff determined to rely upon the CBA, and its seniority provisions, when he determined to seek reinstatement. The CBA provides that seniority for recall terminates if one has truly resigned from the union. Plaintiff cannot at one time insist that he was not a union member for purposes of filing a grievance, but at the same time a union member for purposes of the recall. Plaintiff must understand that without his union seniority, which would have been broken by a recognized withdrawal from the union, see CBA at Article 13, the asserted side agreement with management about his report day was irrelevant because he would not have been recalled in the first place. The CBA was so integral to the recall of plaintiff that it seems artificial not to recognize its preeminence simply because of an ambiguous union withdrawal. This case is not unlike Aguilera v. Pirelli Armstrong Tire Corporation, 223 F.3d 1010, 1015 (9th Cir. 2000), where the breach of contract claims arose from alleged preemployment promises, and an employee was subsequently hired under the CBA, with the result that state law claims were preempted by the LMRA. Such a preemployment agreement could only be effective as part of the CBA, and therefore the CBA controlled. Id.

Based on the evidence submitted, plaintiff's complaint is preempted by the LMRA. Because he did not file his action within the six month statute of limitations period

1 | required by that Act, his action is time barred.

2 | CONCLUSION

3 |   Accordingly, IT IS ORDERED that defendants' motion to dismiss is granted and
4 | this action is dismissed with prejudice.  See Local Rule 11-110; Fed. R. Civ. P. 41(b).
5 | DATED: 01/22/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH/076
Brown1245.mtd.wpd